|  |  |
|---|---|
| T.A., Mother and Guardian of Minor Children, T.A. and T.A., <br><br> *Plaintiff,* <br><br> v. <br><br> COUNTY OF DELAWARE, et al., <br><br> *Defendants.* | CIVIL ACTION <br> NO. 18-2141 |

**PAPPERT, J.**                                                            **March 14, 2019**

## MEMORANDUM

Mother, T.A., sues on behalf of her minor daughter, whose initials are also T.A.,

for damages arising from T.A.'s alleged sexual abuse while in foster care.  Mother

alleges under 42 U.S.C. § 1983 that the County of Delaware, the Delaware County

Department of Human Services Children and Youth Services ("CYS") and CYS

employees Oreatha Smith and Michelle Kane, among other defendants, violated T.A.'s

Fourteenth Amendment right to substantive due process and that Smith and Kane are

liable for negligence.  The County, CYS, Smith and Kane jointly move to dismiss all

claims.[1]  The Motion is granted in part and denied in part, with leave to amend one

claim, for the reasons that follow.

---

[1]      The Complaint also names Brittaney Gordon as a defendant, contending that Gordon is a
CYS employee who participated in the alleged wrongdoing.  The Motion to Dismiss is not brought on
Gordon's behalf because "There is not now, nor has there been, a County CYS employee Brittaney
Gordon."  (Defs.' Mot. Dismiss ("Mot.") 2 n.1, ECF No. 12.)
         Also, CYS moves to dismiss the claim against it on the grounds that it is not a separate legal
entity from Delaware County and cannot be independently sued.  The Court agrees. *See Walthour v.
Child & Youth Servs.*, 728 F. Supp. 2d 628, 640–41 (E.D. Pa. 2010) (citing *Padilla v. Twp. of Cherry
Hill*, 110 Fed. App'x 272, 278 (3d Cir. 2004) ("[D]epartments of a county, e.g., the Delaware County
Department of Children and Youth Services, do not have a separate corporate existence from the

I

CYS is an office of the Delaware County Department of Human Services that provides foster care services to children in Delaware County.  *See* (Compl. ¶¶ 4, 7). CYS placed T.A. in foster care with Brandon and Catherine Johnson when T.A. was roughly six months old.[2]  (*Id*. at ¶ 7.)  Mother believes Brandon Johnson, sexually abused T.A. while she lived in the Johnsons' home.  (*Id*. at ¶¶ 11, 13, 19.)

T.A. was three or four years old when she was released from foster care and reunited with Mother on January 28, 2017.  (*Id*. at ¶ 7.)  Mother became suspicious that T.A. had been abused when T.A. "began acting out sexually, including asking her brother, who was 13 years old at the time, if she could view his private parts."  (*Id*. at ¶ 9.)  At some point, T.A. told Mother that Brandon Johnson had put his finger in her "private part" while she lived with him and "indicated that this had been going on for several years according to her understanding of time, and that it had happened repeatedly."  (*Id*. at ¶ 13(j).)  T.A. also told Mother she had asked Brandon to stop, that Catherine Johnson knew what Brandon was doing, and that Catherine once examined her.  (*Id*. at ¶ 13(k).)  Mother also believes Brandon "penetrated [T.A.] with his private part, and placed it in or on her mouth on repeated occasions."  (*Id*. at ¶ 13(m).)

county and are therefore not entities capable of being sued under Section 1983.")  CYS is accordingly dismissed from the case with prejudice.

Finally, Mother sued the Glen Mills School on behalf of her minor son, who also bears the initials T.A.  She asserted claims on his behalf against the school for assault and battery and negligence.  *See* (Compl. ¶¶ 41–50, ECF No. 2).  The Court previously dismissed those claims for lack of jurisdiction.  *See* (ECF No. 25).

[2]     The Complaint's caption identifies the foster parents as the Johnsons but they are alternately referred to throughout the Complaint as the Jacksons.  The Defendants state that their names are Johnson, *see* (Mot. 2 n.2), so the Court refers to them that way.

Mother called CYS to report T.A.'s abuse. (*Id.* at ¶ 9.) CYS opened an investigation in or around March of 2017. (*Id.* at ¶ 10.) According to the Complaint, the City of Chester Police Department eventually arrested the Johnsons for crimes related to T.A.'s abuse. (*Id.* at ¶ 11.) When Mother filed this lawsuit, she believed their criminal proceedings were still pending. (*Id.*)

Mother claims that the County and CYS employees Smith and Kane are liable under § 1983 for violating T.A.'s right to substantive due process (Count I) and that Smith and Kane were negligent (Count III). She alleges that CYS employees did not run background checks on the Johnsons, intentionally did not visit the Johnsons' home while T.A. lived there, deliberately ignored T.A.'s symptoms of emotional distress, deliberately did not ask preschool and daycare facilities about T.A.'s safety, deliberately did not interview or physically inspect T.A., deliberately did not take T.A. for medical checkups and deliberately did not interview Catherine Johnson and others who had contact with T.A.. (*Id.* at ¶¶ 12–13.) She believes CYS employees intentionally ignored T.A.'s attempts to tell them she was being abused and failed to keep track of T.A.'s clothing in the foster home, which Brandon Johnson "would either hide or destroy" after he abused her. (*Id.* at ¶¶ 15–16.)

II

Defendants initially contend that Mother improperly filed her Complaint anonymously without first seeking permission from the Court to do so. They argue she should not be allowed to proceed anonymously because "the County has information that the Plaintiff does not have standing to bring this action" and "the present posture permits the Plaintiff to make unfounded serious allegations . . . without any recourse."

(Defs.' Mem. Supp. Mot. Dismiss ("Defs.' Mem.") 6, ECF No. 12.)  Mother responds that

she filed suit anonymously "to protect the identity of [T.A.] from the public, based

particularly on the nature of the allegations of sexual abuse against her daughter."

(Pl.'s Mem. Opp'n Mot. Dismiss ("Pl.'s Mem.") 9, ECF No. 24.)  Defendants do not

dispute that T.A., still a minor, should remain anonymous.  *See* Fed. R. Civ. P. 5.2(a)(3).

"One of the essential qualities of a Court of Justice is that its proceedings should

be public." *Doe v. Megless*, 654 F.3d 404, 408 (3d Cir. 2011) (citations omitted).  Federal

Rule of Civil Procedure 10(a) requires that "title of the complaint must name all the

parties" to an action.  Rule 17(a)(1) similarly requires every action to "be prosecuted in

the name of the real party in interest."  The public has a right to know who is using the

court, and defendants have a right to confront their accusers.  *Megless*, 654 F.3d at 408.

"A plaintiff's use of a pseudonym 'runs afoul of the public's common law right of access

to judicial proceedings.'"  *Id.* (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214

F.3d 1058, 1067 (9th Cir. 2000)).

The Federal Rules of Civil Procedure do not expressly permit plaintiffs to file

suit anonymously, but courts do allow plaintiffs to remain anonymous in "exceptional

cases."  *Id.* (citing *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 371 n.2 (3d Cir.

2008)).  To remain anonymous, a plaintiff must show (1) fear of severe harm and (2)

that the fear is reasonable.  *Id.* (quoting *Doe v. Kamehameha Sch./Bernice Pauahi

Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir. 2010)).  Once a plaintiff alleges reasonable

fear, the court will balance the plaintiff's interest against the public's strong interest in

an open litigation process. *Id.* (citations omitted).[3]

Mother has alleged reasonable fear that T.A.'s identity will not remain

anonymous if she is directed to re-file the Complaint using her full name. The Federal

Rules recognize and protect the privacy interests of minors by requiring parties to

identify minors by their initials in court filings. *P.M. v. Evans-Brant Cent. Sch. Dist.*,

2008 WL 4379490 at *3 (W.D.N.Y. Sept. 22, 2008) (citing Fed. R. Civ. P. 5.2(a)(3)). This

protection would likely be "eviscerated" if a parent filing on behalf of her child was not

also permitted to remain anonymous. *D.M. v. Cty. of Berks*, 929 F. Supp. 2d 390, 402

(E.D. Pa. 2013) (quoting *P.M.*, 2008 WL 4379490 at *3); *accord S.F. v. Archer Daniels

Midland Co.*, 594 F. App'x 11, 12 n.1 (2d Cir. 2014). In this case, therefore, there is an

atypically weak public interest in knowing Mother's identity.

---

[3]     In weighing these interests, courts consider the following non-exhaustive list of factors in favor of anonymity:

> (1) the extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives,

*Megless*, 654 F.3d at 409 (quoting *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467–68 (E.D. Pa. 1997)), and the following non-exhaustive factors disfavoring anonymity:

> (1) the universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quoting *Provident Life*, 176 F.R.D. at 468).

Moreover, Defendants' argument that they must know Mother's identity to determine her "standing" to sue is unpersuasive. As discussed in more detail below, Defendants are aware enough of Mother's identity to declare that she does not have custody of T.A. They were also able to locate and obtain an affidavit from T.A.'s guardian *ad litem*.

III

Although Defendants' Motion challenges Mother's "standing" to sue on T.A.'s behalf, the issue Defendants raise is whether Mother has capacity to sue as T.A.'s representative. Capacity must not be confused with Article III standing, which is not implicated here. *See Gardner by Gardner v. Parson*, 874 F.2d 131, 137 n.9 (3d Cir. 1989).

Rule 17 requires that every action "be prosecuted in the name of the real party in interest." "This means that an 'action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right.'" *Aetna Life Ins. Co. v. Found. Surgery Affiliates, LLC*, 2018 WL 7286548 at *4 (E.D. Pa. Dec. 13, 2018) (quoting *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 193 (2d Cir. 2003)). Where the party in interest is a minor, Rule 17(c)(1) provides that a representative, such as a general guardian, committee, conservator, or like fiduciary may sue on a minor's behalf. If the minor does not have a representative, he or she may sue by a next friend or a guardian *ad litem*. Fed. R. Civ. P. 17(c)(2). "The court must appoint a guardian ad litem—or issue another appropriate order—to protect a minor . . . who is unrepresented." *Id.*

Relatedly, Rule 9(a) provides that "[e]xcept when required to show that the court has jurisdiction," a complaint need not allege the plaintiff's authority to sue in a representative capacity. Fed. R. Civ. P. 9(a)(1)(B). To raise an issue regarding a representative's capacity to sue, the challenging party "must do so by a specific denial, which must state any supporting facts that are peculiarly within the party's knowledge." Fed. R. Civ. P. 9(a)(2). In other words, a complaint will not be dismissed for failure to plead the plaintiff's capacity to sue "except where lack of capacity affirmatively appears on the face of the complaint, or where an opposing party has made a specific negative averment in a responsive pleading." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 540 (D.N.J. 2004) (citations omitted). When the issue of capacity has been properly raised, the district court will determine whether the minor's interests are adequately protected and, if not, will either appoint a next friend or guardian or issue another appropriate order. *Hall v. Ridley Twp.*, 1992 WL 57925 at *1 (E.D. Pa. Mar. 17, 1992).

Defendants believe Mother lacks capacity to sue as T.A.'s representative because she lost legal and physical custody of T.A. before filing this lawsuit. Defendants accuse Mother of "falsely inform[ing] the Court that she has custody and that [T.A.] live[s] with her." (Defs.' Mem. 7; *see* Compl. ¶ 2.) In support of their argument, Defendants submit the affidavit of Heather L. Paterno, T.A.'s "Court Appointed Guardian *ad Litem* in the Dauphin County dependency matter." *See* (Defs.' Mem. Ex. B.) Paterno states that T.A. has been "in the legal and physical custody of Dauphin County Children & Youth Services" since August of 2017, and Mother "has not had physical or legal custody . . . since that time." (*Id.*) In response, Mother argues that even if she did lose

custody of T.A. in 2017, she still "maintained legal guardianship" and "retained the right to bring suit" on T.A.'s behalf.  (Pl.'s Mem. 11.)

Under Rule 17(b), a representative's capacity to sue is determined "by the law of the state where the court is located."  Fed. R. Civ. P. 17(b)(3); *see Kedra v. City of Phila.*, 454 F. Supp. 652, 660 n.4 (E.D. Pa. 1978).  Pennsylvania law provides:

> A custodian to whom legal custody has been given . . . has the right to the physical custody of the child, the right to determine the nature of the care and treatment of the child . . . and the right and duty to provide for the care, protection, training, and education, and the physical, mental, and moral welfare of the child.  An award of legal custody shall be subject to the conditions and limitations of the order and to the *remaining rights and duties of the parents or guardian of the child as determined by the court* . . . .

42 Pa. Stat. and Cons. Stat. Ann. § 6357 (emphasis added).  "The essential feature of this structure," in the eyes of the Pennsylvania Supreme Court, "is that it divides responsibility for the child's welfare."  *In re Adoption of Crystal D.R.*, 480 A.2d 1146, 1150 (1984).  "Although [an] agency usually obtains legal custody in foster family care, the child still legally 'belongs' to the parents and the parent retains guardianship. . . . Only the parent can . . . represent him at law."  *Id.* (quoting *Smith v. Org. of Foster Families,* 431 U.S. 816, 826–28 (1977)).  If, however, the state court enters an order fully terminating parental rights, the parent is divested of "any legal right to contest . . . who controls and can exercise the legal rights of the child."  *Crawford v. Wash. Cty. Children & Youth Servs.*, 2008 WL 239454 at *5 (W.D. Pa. Jan. 29, 2008) (citing 23 Pa. Stat. and Cons. Stat. Ann. § 2521).

Defendants' effort to challenge Mother's capacity to sue under Rule 9(a)(2) thus fails.  Although she was not required to do so under Rule 9(a), Mother alleges in the title of her Complaint that she is T.A.'s legal guardian.  Heather Paterno's affidavit

does not disturb Mother's capacity, as T.A.'s guardian, to sue on T.A.'s behalf. Under

Pennsylvania law, even if Mother did lose legal and physical custody of T.A. in August

of 2017, her right and duty to represent T.A. at law remained intact.

IV

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6),

the plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for

relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint

must provide "more than labels and conclusions" or "a formulaic recitation of the

elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(citation omitted). "Factual allegations must be enough to raise a right to relief above

the speculative level on the assumption that all the allegations in the complaint are

true (even if doubtful in fact)." *Id.* (citation omitted). While a complaint need not

include detailed facts, it must provide "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550

U.S. at 555).

*Twombly* and *Iqbal* require the Court to take three steps to determine whether

the complaint will survive defendants' motion to dismiss. *See Connelly v. Lane Const.

Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, it must "take note of the elements the

plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Next, it

must identify the allegations that are no more than legal conclusions and thus "not

entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally,

where the complaint includes well-pleaded factual allegations, the Court "should

assume their veracity and then determine whether they plausibly give rise to an

entitlement to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).  The Court should "construe truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them."  *Id.* at 791.

A

Smith and Kane contend that the Complaint does not sufficiently allege that they deprived T.A. of substantive due process.  They assert that the Complaint must state with particularity what they each did—or failed to do—to deprive T.A. of her liberty and that the Complaint must allege that they could have foreseen T.A.'s abuse.

The Fourteenth Amendment prohibits states from depriving a person of life, liberty, or property without due process of law.  U.S. Const. amend. XIV, § 1.  In a § 1983 action, when analyzing a substantive due process claim, the Court must initially determine whether the Complaint alleges a deprivation of a federal right.  *Bangura v. City of Phila.*, 2008 WL 934438 at *3 (E.D. Pa. Apr. 1, 2008) (citing *Gruenke v. Seip*, 225 F.3d 290, 298 (3d Cir. 2000)).  Smith and Kane do not dispute that the Complaint alleges a deprivation of T.A.'s liberty interest in her bodily integrity.  *See* (Compl. ¶ 29); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (recognizing personal bodily integrity as a liberty interest under the Due Process Clause).

The Court must next identify whether the identified liberty interest has, in fact, been aggrieved according to the facts alleged in the Complaint.  *K.S.S. v. Montgomery Cty. Bd. of Comm'rs*, 871 F. Supp. 2d 389, 398 (E.D. Pa. 2012) (citing *Harris v. Lehigh Cty. Office of Children & Youth Servs.*, 418 F. Supp. 2d 643, 647 (E.D. Pa. 2005)). "When the state places a child in state-regulated foster care, the state has entered into a special relationship with that child which imposes upon it certain affirmative duties.

10

The failure to perform such duties can give rise, under sufficiently culpable circumstances, to liability under section 1983." *Nicini v. Morra*, 212 F.3d 798, 808 (3d Cir. 2000). Liability attaches where the defendant's conduct "shocks the conscience" in the particular setting in which that conduct occurred. *Conn v. Bull*, 307 F. App'x 631, 634 (3d Cir. 2009) (citing *Nicini*, 212 F.3d at 810). "Because deliberate indifference is the proper standard, 'mere negligence is never sufficient for substantive due process liability.'" *Id.* (citing *Nicini*, 212 F.3d at 810).

The Complaint sufficiently alleges that the County and CYS employees Smith and Kane entered a special relationship with T.A. when they placed her in foster care. (Compl. ¶ 12.) It further states that Smith and Kane did not run background checks on the Johnsons and did not visit their home while T.A. lived there, ignored T.A.'s symptoms of emotional distress and attempts to tell them she was being abused, did not interview or inspect T.A. or take her for medical checkups and did not ask Catherine Johnson or preschool and daycare facilities about T.A.'s safety. (*Id.* at ¶¶ 12–16.) Assuming the truth of these allegations, the Court cannot find at this stage that Smith and Kane's conduct did not reach a level of conscious disregard for T.A.'s safety so egregious as to violate her right to substantive due process. "Issues of this sort are fact-bound. They cannot be resolved on the pleadings." *S.B. ex rel. D.M. v. City of Phila.*, 2007 WL 3010528, at *3 (E.D. Pa. Oct. 12, 2007); *see also M.J. v. Luzerne Cty.*, 2018 WL 1960527 (M.D. Pa. Apr. 25, 2018); *K.S.S.*, 871 F. Supp. 2d.

B

Smith and Kane contend that the substantive due process claim should nevertheless be dismissed because they are entitled to qualified immunity from suit.

As the Court has already determined that the Complaint alleges a violation of T.A.'s right to substantive due process, the Court will address only Smith and Kane's argument that T.A.'s right to substantive due process was not clearly established at the time of the alleged violation.

Defendants have the burden of establishing qualified immunity. *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010). Qualified immunity protects state actors who have committed constitutional violations if the plaintiff's rights were not "clearly established" at the time of the violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). A right is clearly established if the state of the law at the time of the violation provides state actors "fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). No liability will attach if a reasonable state actor could have believed that the challenged conduct was lawful, *see Springer v. Henry*, 435 F.3d 268, 280 (3d Cir. 2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)) ("[T]he court should ask whether the official acted reasonably under settled law in the circumstances."), but a plaintiff's rights may be clearly established even if the defendants' precise conduct has not yet been declared unlawful. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The subjective intent of the state actor is irrelevant. *Id.* at 639.

Smith and Kane argue that it was not clearly established, at the time of T.A.'s alleged abuse, that child welfare workers are "required to physically inspect a child for possible sexual abuse when they visit the child in placement," and that "reasonable [CYS] staff and administrators would have believed that their actions were lawful." (Defs.' Mem. 15–16.) However, as discussed above, it is clearly established that when

the County placed T.A. in foster care, it entered a special relationship with T.A. that imposed upon it certain affirmative duties. It is equally clear that Defendants' failure to perform those duties gives rise to liability if Mother can establish that Defendants acted with deliberate indifference. *See supra* Section IV.A; *Nicini*, 212 F.3d at 808.

The Court cannot yet determine whether Smith and Kane are entitled to qualified immunity on this claim. As the Third Circuit Court of Appeals has noted, "the importance of resolving qualified immunity questions early 'is in tension with the reality that factual disputes often need to be resolved before determining whether defendant's conduct violated a clearly established constitutional right.'" *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 242 n.7 (3d Cir. 2008) (citing *Curley v. Klem*, 298 F.3d 271, 277–78 (3d Cir. 2002)). The Complaint sufficiently alleges that Smith and Kane violated T.A.'s clearly established right to due process.

C

Smith and Kane also argue, and Mother does not contest, that they are immune from suit for negligence[4] under the Pennsylvania Political Subdivision Tort Claims Act. The PSTCA, 42 Pa. Cons. Stat. Ann. §§ 8541 *et seq*., provides that "[e]xcept as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." *Id.* at § 8541. Agency employees are liable "to the same extent as [their] employing local agency," so long as their conduct was within

---

[4]     To establish a cause of action in negligence under Pennsylvania law, Mother must demonstrate (1) Smith and Kane owed T.A. a duty of care, (2) Smith and Kane breached the duty of care, (3) the breach resulted in injury to T.A. and (4) T.A. suffered actual loss or damage. *Levy v. Cont'l Airlines, Inc.*, 2007 WL 2844592 at *2 (E.D. Pa. Oct. 1, 2007) (quoting *Martin v. Evans*, 711 A.2d 458, 461 (Pa. 1998)).

the scope of their employment. 42 Pa. Cons. Stat. Ann. § 8545; *see also Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006).

Smith and Kane are immune from Mother's negligence claim under the PSTCA, and their alleged conduct does not fall within one of the PSTCA's exceptions to immunity for negligent acts.[5] *See Torres v. Allentown Police Dep't*, 2014 WL 4081477 at *9–10 (E.D. Pa. Aug. 18, 2014). Mother's negligence claim is dismissed with prejudice, as amendment would be futile.

D

Finally, the County argues that the Complaint does not sufficiently allege municipal liability for its purported violation of T.A.'s right to substantive due process. [6]

Generally, a municipality cannot be held liable under 42 U.S.C. § 1983 under the doctrine of *respondeat superior*. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691–95) (1978)). To state a claim for municipal liability, "a plaintiff must establish that: (1) the municipality had a policy or custom that deprived the plaintiff of his constitutional rights; (2) the municipality acted deliberately and was the moving force behind the deprivation; and (3) the plaintiff's injuries were caused by the identified policy or custom." *Simpson v. Ferry*, 202 F. Supp. 3d 444, 452 (E.D. Pa. 2016) (citing *Monell*, 436

---

[5] The eight exceptions to immunity for negligent acts provided by statute are: (1) vehicle liability, (2) care, custody or control of personal property, (3) real property, (4) trees, traffic controls and street lighting, (5) utility service facilities, (6) streets, (7) sidewalks and (8) care, custody or control of animals. 42 Pa. Cons. Stat. Ann. § 8542(b).

[6] The County also argues that it cannot be held liable for punitive damages. Mother concedes that she cannot recover punitive damages from the County. (Pl.'s Mem. 30–31); *see also City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *Doe v. Cty. of Centre, PA*, 242 F.3d 437, 455 (3d Cir. 2001). Mother requests punitive damages to the extent permitted by law from the defendants sued in their individual capacities.

U.S. at 692–94 and *Buoniconti v. City of Phila.*, 148 F. Supp. 3d 425, 435–36 (E.D. Pa. 2015)).  To survive a motion to dismiss, a plaintiff must "identify a custom or policy, and specify what exactly that custom or policy was."  *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (citation omitted).  Failure to allege conduct by a municipal decisionmaker is fatal.  *Id.*; *see also Santiago v. Warminster Twp.*, 629 F.3d 121, 135, n.11 (3d Cir. 2010) (noting that plaintiff has "the obligation to plead in some fashion that [the decisionmaker] had final policy making authority, as that is a key element of a *Monell* claim.").

Failure to train claims are generally considered a subcategory of policy or practice liability.  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds*, *Taylor v. Barkes*, 135 S. Ct. 2042 (2015).  A municipality may be liable for failing to train its employees only if the failure amounts to deliberate indifference, *City of Canton v. Harris*, 489 U.S. 378, 389–390 (1989), and the deficiency of the training program is closely related to the plaintiff's ultimate injuries.  *Id.* at 391. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citation omitted).  Without a pattern of past violations, a plaintiff can proceed on a single violation theory if she can "show both contemporaneous knowledge of the offending incident . . . and circumstances under which [a municipal] supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate."  *Montgomery v. De Simone*, 159 F.3d 120, 127 (3d Cir. 1998) (citing *Bonenberger v. Plymouth Twp.,* 132 F.3d 20, 25 (3d Cir. 1997)).

In the Complaint, Mother conclusorily recites elements of municipal liability under *Monell*: that the County's failure to properly train social workers to "properly assess children's safety who are in their custody" and to "properly supervise foster homes" caused T.A.'s injuries. (Compl. ¶ 32.) She does not, however, allege a pattern of similar violations by Delaware County of children's rights to substantive due process in foster care. She also fails to allege deliberate indifference under a single violation theory. There is no allegation that the County had contemporaneous knowledge of the alleged constitutional violation, nor that circumstances existed under which a County supervisor's action or inaction could have been interpreted as approving the violation. Count I is therefore dismissed without prejudice as to the County.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*
GERALD J. PAPPERT, J.